**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION**

| | | |
|---|---|---|
| **DAIRY CLEAN PRODUCTS, INC.** | § | |
| **d/b/a PROXY-CLEAN PRODUCTS,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. 4:19-cv-____** |
| | § | |
| **KANTERS ANIMAL HEALTH, LLC,** | § | |
| **KANTERS SPECIAL PRODUCTS B.V.,** | § | |
| **KSP HOLDING B.V., and** | § | |
| **ANIMAL HEALTH** | § | |
| **INTERNATIONAL, INC.,** | § | |
| | § | |
| **Defendants.** | § | **JURY TRIAL DEMANDED** |

**PLAINTIFF PROXY-CLEAN PRODUCTS'
ORIGINAL COMPLAINT FOR TRADEMARK INFRINGEMENT,
FALSE ASSOCIATION AND FALSE ADVERTISING,
CYBERSQUATTING, AND UNFAIR COMPETITION**

Plaintiff Dairy Clean Products, Inc., d/b/a Proxy-Clean Products ("Proxy-Clean Products")

files this Original Complaint against Defendants Kanters Animal Health, LLC ("Kanters AH"),

Kanters Special Products B.V. ("KSP"), and KSP Holding B.V. ("KSP Holding"), (collectively

"Kanters"), and Animal Health International, Inc. ("AHI"), (collectively "Defendants").

**I.
INTRODUCTION**

1.     This proceeding is a trademark infringement action brought by Plaintiff Proxy-

Clean Products against Defendants Kanters and AHI for infringement of trademarks including

Proxy-Clean Products' federally registered Mineral-Clean® trademark, and infringement of its

"-Clean" family of trademarks, including its Proxy-Clean®, Mineral-Clean®, Hydro-Clean®, and

Foam-Clean™ trademarks.

2.     Plaintiff Proxy-Clean Products also asserts false association federal unfair competition claims against Defendants Kanters and AHI for the false association arising from their infringement of Plaintiff's Mineral-Clean® trademark, and infringement of Plaintiff's "-Clean" family of trademarks, which is likely to cause confusion and mistake, and to deceive consumers as to an affiliation of Kanters and AHI with Plaintiff that does not exist.  Although Plaintiff Proxy-Clean Products in the past has been affiliated with Defendant KSP as one of Plaintiff's vendors, and affiliated with Defendant AHI as one of Plaintiff's distributors, Plaintiff is in no way now affiliated with any of the Defendants.  Plaintiff and Defendants are competitors.  Consumers should not be confused or deceived into believing that these competitors are affiliated in any way.

3.     Plaintiff Proxy-Clean Products asserts false advertising federal unfair competition claims against Defendants Kanters and AHI for falsely asserting that Kanters' and AHI's competing products are "exactly the same" as Plaintiff's products.  Defendants Kanters and AHI are falsely asserting that their dangerous and defective products are the same as Plaintiff's safe and superior products, which is likely causing severe damage to Plaintiff in the marketplace.

4.     In addition, Plaintiff Proxy-Clean Products asserts a claim under the federal Anti-Cybersquatting Consumer Protection Act ("ACPA"), Lanham Act Section 43(d)(1), 15 U.S.C. § 1125(d)(1), for Defendant KSP's cybersquatting on the "proxy-clean.com" Internet domain. Plaintiff seeks a compelled transfer of the "proxy-clean.com" domain name from Defendant KSP to Plaintiff.

5.     Plaintiff Proxy-Clean Products also asserts a Texas common law unfair competition claim against Defendants Kanters and AHI.

## II.
## PARTIES

6.    Plaintiff Proxy-Clean Products is a Texas corporation with its principal place of business in Melissa, Texas.

7.    Defendant Kanters AH is an Iowa corporation, which identifies its principal place of business as 203 N. LaSalle Street, Chicago, IL 60601.

8.    Defendant Kanters AH may be served with process by serving its registered agent for service, CT Corporation System, at 400 E Court Ave, Suite 110, Des Moines, IA 50309.

9.    Defendant KSP is a Dutch limited liability company with its principal place of business in The Netherlands.

10.    Defendant KSP may be served with process pursuant to the Hague Service Convention, by delivering the papers to The Netherlands Central Authority, and pursuant to Rule 4(f)(2)(C)(ii) of the Federal Rules of Civil Procedure, by the Clerk of this Court mailing the papers, requiring a signed receipt, to KSP at Middenakkerweg 1, 5741 HS Beek en Donk, The Netherlands.

11.    Defendant KSP Holding is a Dutch limited liability company with its principal place of business in The Netherlands.

12.    Defendant KSP Holding may be served with process pursuant to the Hague Service Convention, by delivering the papers to The Netherlands Central Authority, and pursuant to Rule 4(f)(2)(C)(ii) of the Federal Rules of Civil Procedure, by the Clerk of this Court mailing the papers, requiring a signed receipt, to KSP Holding at Middenakkerweg 1, 5741 HS Beek en Donk, The Netherlands.

13.    Defendant AHI is a Colorado corporation, which identifies its principal place of business as 1031 Mendota Heights Road, St. Paul, Minnesota 55120.

14.     Defendant AHI has registered and is authorized to transact business in the State of Texas, and may be served with process by serving its registered agent for service, CT Corporation System, at 1999 Bryan Street, Suite 900, Dallas, Texas 75201.

### III.
### JURISDICTION AND VENUE

15.     This action states claims arising under the trademark laws of the United States, 15 U.S.C. §§ 1051 *et. seq*.  Plaintiff Proxy-Clean Products asserts claims including infringement of its federally registered Mineral-Clean® trademark.  This Court has original federal question subject matter jurisdiction over these claims under 15 U.S.C. § 1121(a), 28 U.S.C. § 1331, and 28 U.S.C. § 1338.  This Court has supplemental jurisdiction over the related state law unfair competition claim under 28 U.S.C. § 1367.

16.     This Court has personal jurisdiction over Defendant Kanters AH because Kanters AH is doing business in Texas, and because it is committing torts including trademark infringement, which are the subject of this action, in Texas.

17.     This Court has personal jurisdiction over Defendant AHI because AHI has designated a registered agent for service of process in Texas.  This Court also has personal jurisdiction over Defendant AHI because AHI is doing business in Texas, and because it is committing torts including trademark infringement, which are the subject of this action, in Texas.

18.     Venue is proper in this Court under 28 U.S.C. § 1391 because the Defendants Kanters AH and AHI reside in this judicial district, and because, on information and belief, a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this judicial district.

19.     Defendant AHI resides in this judicial district, under 28 U.S.C. § 1391(c)(2), because AHI operates a shipping warehouse, including a call center, in this judicial district at 804

Henrietta Creek Road, Roanoke, Texas 76262.  28 U.S.C. § 1391(c)(2) ("[A]n entity . . . shall be deemed to reside, if a defendant, in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question.").

20.     Defendant Kanters AH resides in this judicial district, under 28 U.S.C. § 1391(c)(2), because Kanters AH, on information and belief, does business in this judicial district including shipping of products at issue in this case to Defendant AHI's shipping warehouse in this judicial district at 804 Henrietta Creek Road, Roanoke, Texas 76262.  28 U.S.C. § 1391(c)(2) ("[A]n entity . . . shall be deemed to reside, if a defendant, in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question.").

21.     Venue is proper in this Court under 28 U.S.C. § 1391(c)(3) because Defendants KSP and KSP Holding are not residents of the United States.  28 U.S.C. § 1391(c)(3) ("For all venue purposes-- . . . a defendant not resident in the United States may be sued in any judicial district, and the joinder of such a defendant shall be disregarded in determining where the action may be brought with respect to other defendants.").

22.     Furthermore, venue is proper in this Court under 28 U.S.C. § 1391(d) because Defendants Kanters AH and AHI are subject to personal jurisdiction in this judicial district.  28 U.S.C. § 1391(d) ("[I]n a State which has more than one judicial district and in which a defendant that is a corporation is subject to personal jurisdiction at the time an action is commenced, such corporation shall be deemed to reside in any district in that State within which its contacts would be sufficient to subject it to personal jurisdiction if that district were a separate State.").

23.     This Court has personal jurisdiction over alien Defendant KSP because it exports products from The Netherlands, to the United States, that are the subject of the trademark

infringement claims in this action, shipping those products to Defendant Kanters AH in the United States, which then, on information and belief, ships those products nationwide through its distributor Defendant AHI, including numerous locations in Texas, such as AHI's Roanoke, Texas shipping warehouse in this judicial district.  Defendant KSP thereby ships its products through the stream of commerce, into this state, and this judicial district, intentionally availing itself of access to this forum state's markets where the harm to Plaintiff Proxy-Clean Products occurs. Furthermore, this Court has personal jurisdiction over alien Defendant KSP under the national personal jurisdiction doctrine.

24.     This Court has personal jurisdiction over alien Defendant KSP Holding, which as the applicant for federal registration of "AGSAN-CLEAN" as a trademark, asserts that it intends to use the mark in the United States, and, on information and belief, has through Defendant KSP used the mark on goods exported from The Netherlands, to the United States, that are the subject of the trademark infringement claims in this action, shipping those products to Defendant Kanters AH in the United States, which then, on information and belief, ships those products nationwide through its distributor Defendant AHI, including numerous locations in Texas, such as AHI's Roanoke, Texas shipping warehouse in this judicial district.  Defendant KSP Holding thereby ships its products through the stream of commerce, into this state, and this judicial district, intentionally availing itself of access to this forum state's markets where the harm to Plaintiff Proxy-Clean Products occurs.  Furthermore, this Court has personal jurisdiction over alien Defendant KSP Holding under the national personal jurisdiction doctrine.

25.     This action states an additional claim arising under the trademark laws of the United States, 15 U.S.C. § 1125(d).  Plaintiff Proxy-Clean Products asserts a cause of action against Defendant KSP for cybersquatting under Section 1125(d)(1)(A).  This Court has original subject

matter jurisdiction over the cybersquatting claim under 28 U.S.C. §§ 1331 and 1338(a), and 15 U.S.C. § 1121(a).

26.     Venue is proper in this Court for the cybersquatting claim under 28 U.S.C. § 1391(b)(2), because a substantial part of the events or omissions giving rise to the claims occurred in this judicial district, and a substantial part of the property that is the subject of the action is situated in this judicial district, and under 28 U.S.C. § 1391(c)(3) because Defendant KSP is not a resident of the United States.  28 U.S.C. § 1391(c)(3) ("For all venue purposes-- . . . a defendant not resident in the United States may be sued in any judicial district, and the joinder of such a defendant shall be disregarded in determining where the action may be brought with respect to other defendants.").

## IV.
## BACKGROUND

Proxy-Clean Products Company History

27.     Plaintiff Proxy-Clean Products is a family owned business founded in 1991, and located in Melissa, Texas.  Proxy-Clean Products was founded by James Gammill, who ran the business for over a decade up through the time when management of operations transitioned to the next generation including his son Jeff Gammill, daughter Julie McDonough, and son-in-law Wade McDonough, now having a total of eight dedicated full-time employees, and supported by over fifty full-time sales representatives through its distributors in the United States, Mexico, and Canada.

28.     For almost thirty years Proxy-Clean Products has provided products and services to the Food Animal Industry.  Their philosophy is to provide customers with the highest quality products combined with outstanding customer service.  Proxy-Clean Products strives to help their customers achieve exceptional results by providing products that are easy to use and cost effective.

By adhering to this philosophy, Proxy-Clean Products has grown from a small company providing services in only three states, to having a distribution network across the United States, Mexico, and Canada.  Proxy-Clean Products is constantly looking at innovative ways to provide new products and services to the Food Animal Industry.

29.     The products at issue in this case are primarily focused on products sold for use in livestock drinking water systems to prevent and remove mineral buildup and scale in the water pipes, to prevent and remove heavy soils in the water, and to condition the water by lowering the pH and suspending heavy metals and minerals.

30.     Plaintiff's particular products at issue in this case include its Mineral-Clean® product, which is a proprietary blend of organic and inorganic acids specially formulated to remove buildup and scale in livestock drinking water systems, and its Proxy-Clean® product, which is a proprietary hydrogen peroxide based product specially formulated to prevent and remove heavy soils in livestock drinking water systems.  Further products in its "-Clean" family of products are Plaintiff's Hydro-Clean® and Foam-Clean™ products.


Trademark Infringement, False Association and False Advertising,
Cybersquatting, and Unfair Competition by Defendants Kanters and AHI

31.     Plaintiff Proxy-Clean Products files this action against Defendants Kanters and AHI for infringement of trademarks including Proxy-Clean Products' federally registered Mineral-Clean® trademark, and infringement of its "-Clean" family of trademarks, including its Proxy-Clean®, Mineral-Clean®, Hydro-Clean®, and Foam-Clean™ trademarks.  In addition, Proxy-Clean Products asserts a claim against Defendant KSP for cybersquatting on the "proxy-clean.com" Internet domain.  Plaintiff also asserts false association and false advertising federal unfair

competition claims, and Texas state common law unfair competition claims, against Defendants Kanters and AHI.

Proxy-Clean Products' Past History with Defendants KSP and AHI

32.     Plaintiff Proxy-Clean Products and the Defendants KSP and AHI have a long history of working together providing products and services to the Food Animal Industry. Defendant AHI has served as a distributor for Proxy-Clean Products, through one of AHI's predecessor companies dating back to the year 2005, and most recently as a distributor for Proxy-Clean Products in the years 2012 through 2018.  Defendant KSP served as a supplier for Proxy-Clean Products about 15 years ago, following Proxy-Clean Products' acquisition of its federal registration for the Proxy-Clean® trademark from KSP in September of 2004.

33.     With the exception of its inexcusable cybersquatting on the "proxy-clean.com" domain name following its sale of the Proxy-Clean® trademark registration to Plaintiff Proxy-Clean Products, Defendant KSP otherwise had apparently been on its best behavior with respect to the Plaintiff, operating exclusively outside the United States and thereby not even competing with Plaintiff in providing products and services to the Food Animal Industry.

Proxy-Clean Products' Development of its "-Clean" Family of Trademarks

34.     From its founding as Dairy Clean Products in 1991, and the almost 15 years since acquiring the Proxy-Clean® federal trademark registration from Defendant KSP in 2004, Plaintiff Proxy-Clean Products has developed its "-Clean" family of trademarks, building on its "Dairy Clean" tradename, and federally registered Proxy-Clean® trademark, to now include federal registrations for its Mineral-Clean® and Hydro-Clean® trademarks, and with Foam-Clean™ as the

most recent addition to its "-Clean" family of trademarks.[1]   Through Plaintiff Proxy-Clean Products' substantial sales over the past three decades, and millions of dollars invested in product development and marketing, growing from serving three states to now nationwide, the Animal Food Industry associates Proxy-Clean Products' trademarks, and the "-Clean" family component of its trademarks, with Plaintiff as the owner and source of its products and services.

35.     Over the almost fifteen-year period since Proxy-Clean Products' 2004 acquisition of the Proxy-Clean® federal trademark registration from Defendant KSP, Defendant KSP has operated exclusively outside the United States, and therefore did not export products into the United States that could interfere with Plaintiff Proxy-Clean Products' development of its "-Clean" family of trademarks.  In particular, Defendant KSP has marketed its hydrogen peroxide based products known as "Aqua-Clean," and its descaling products known as "Cal-Clean," exclusively outside the United States since the year 2007.  And up until recently, Defendant KSP has not otherwise interfered with Proxy-Clean Products' development of its "-Clean" family of trademarks in the United States.  Up until recently, Defendant KSP has not used the "-Clean" component on any of its products other than its "Aqua-Clean" and "Cal-Clean" products, which are sold exclusively outside the United States.

36.     Up until recently, other than the inexcusable cybersquatting, Defendant KSP apparently had respected Plaintiff Proxy-Clean Products' trademark rights, remaining content with operating exclusively outside the United States since Defendant KSP's 2004 exit from the U.S. market through the sale of its U.S. assets including the Proxy-Clean® federal trademark registration to Plaintiff.  But things changed over the past few years.

---

[1] (Exhibits P-1 to P-5 are copies of the Certificates of Registration for Plaintiff's U.S. Trademark Registrations for Proxy-Clean®, Mineral-Clean®, and Hydro-Clean®, and its logo for Foam-Clean™.)

Defendant KSP's Re-Entry into the U.S. Market

37.     In the spring of 2016, Defendant KSP contacted Plaintiff Proxy-Clean Products to discuss KSP's potential re-entry into the U.S. market.  For a year from their initial meeting in June of 2016, up to their last meeting in June of 2017, the parties discussed proposals including Defendant KSP's planned acquisition of a majority interest in Plaintiff Proxy-Clean Products.

38.     Following their last meeting in June of 2017, by which time Plaintiff Proxy-Clean Products had made it clear to Defendant KSP that Proxy-Clean Products was not interested in selling a majority share of its family business, Defendant KSP implemented a plan to steal what it could not buy.

39.     Although Plaintiff Proxy-Clean Products must rely on discovery in this action to discover the full extent of the facts surrounding Defendant KSP's planning and implementation of its re-entry into the U.S. market, Proxy-Clean Products' investigation so far has discovered that Defendant KSP Holding filed a United States trademark application for "AGSAN-CLEAN" on April 18, 2018, incorporated Defendant Kanters AH as its domestic U.S. corporate entity on April 30, 2018, and shipped its first products into the United States from Defendant KSP to Defendant Kanters AH on December 13, 2018.

40.     Defendant Kanters AH, partnering with Defendant AHI as its U.S. distributor, then began showing up at Food Animal Industry trade shows in early 2019, aggressively marketing their products in direct competition with Plaintiff Proxy-Clean Products, infringing Plaintiff's federally registered Mineral-Clean® trademark by marketing their competing "Minex-Clean" products, and infringing Proxy-Clean Products' "-Clean" family of trademarks by marketing competing "-Clean" products "Agsan-Clean" and "Minex-Clean."

Defendant KSP Amps-up Its Cybersquatting on the "proxy-clean.com" Domain Name

41.     As to the Defendant KSP's cybersquatting on the "proxy-clean.com" domain name, while KSP's cybersquatting in the past had been limited to concealing its registration of the domain name at the time of its September 2004 sale of the Proxy-Clean® trademark rights to Plaintiff, and KSP's inexcusable renewal of the registration and holding the domain name hostage over the intervening years, on December 3, 2017, KSP amped-up its cybersquatting by transferring the registration offshore, from the U.S.-based Registrant Tucows to The Netherlands Registrant Openprovider, thereby precluding Plaintiff Proxy-Clean Products from being able to file an in-rem action against the domain name in the United States under the federal Anti-Cybersquatting Consumer Protection Act ("ACPA").

42.     On January 1, 2019, Defendant KSP changed the Domain Name Servers ("DNS") for the "proxy-clean.com" domain to start redirecting traffic to KSP's website at "Kanters.nl", demonstrating Defendants' coordinated plan to willfully infringe Plaintiff Proxy-Clean Products' trademark rights.


Defendant AHI - Repeat Offender

43.     While Defendant KSP, other than the inexcusable cybersquatting, had apparently been on its best behavior with respect to Plaintiff Proxy-Clean Products' trademark rights up until KSP's proposed acquisition of Plaintiff Proxy-Clean Products was rejected in 2017, Defendant Kanters' U.S. distributor Defendant AHI is a repeat offender.

44.     Defendant AHI has served as a distributor for Proxy-Clean Products, through one of AHI's predecessor companies (Walco International) dating back to the year 2005, and most

recently as a distributor for Proxy-Clean Products in the years 2012 through 2018.  Plaintiff Proxy-Clean Products' initial relationship with Defendant AHI as a distributor began with the initial sale of products in May of 2005, and ended in January of 2006, with Proxy-Clean Products terminating the distribution relationship due to AHI's late payment of invoices.

45.     Late in the year 2006, Proxy-Clean Products learned that Casco Products Company, Inc. ("Casco") was manufacturing a hydrogen peroxide based poultry waterline product using the name "Pro-Clean," with labeling and marketing materials that copied Proxy-Clean Products' Proxy-Clean® labeling and marketing materials verbatim.  Defendant AHI (then known as Walco International, Inc.) was serving as the exclusive distributor for Casco's infringing "Pro-Clean" products.  Plaintiff Proxy-Clean Products believes that Defendant AHI was the driving force behind the infringing products, likely having commissioned Casco to manufacture the products as a private label venture for AHI.

46.     In March and April of 2007, Plaintiff Proxy-Clean Products sent cease and desist notice letters to AHI and Casco, demanding that they stop advertising, marketing, and selling the infringing "Pro-Clean" products.  While the manufacturer Casco responded promptly with cooperation that led to a formal agreement through which Casco stopped using the infringing "Pro-Clean" name for its products, Defendant AHI responded with an unapologetic refusal to cease its distribution of the infringing "Pro-Clean" products.  Despite its recalcitrance, Defendant AHI eventually ceased its distribution of the infringing "Pro-Clean" products when it exhausted its supply of infringing products due to its manufacturer Casco's compliance with its agreement to cease its infringement.

47.     After several years had passed since Defendant AHI's relatively short-lived 2006-2007 infringement of Proxy-Clean Products' Proxy-Clean® trademark, AHI once again served as

one of Proxy-Clean Products' distributors in the years 2012 through 2018.  Although the first few years of this renewed relationship went relatively well, AHI's repeated refusal to comply with Proxy-Clean Products' requirements limiting distribution of its products to only certain geographic regions led to significant conflicts with the territories of Proxy-Clean Products' other distributors. Proxy-Clean Products terminated Defendant AHI as one of its distributors in early 2018.

48.     Having served as a distributor for Proxy-Clean Products from May of 2005 to January of 2006, then partnering with a manufacturer to market the infringing "Pro-Clean" products from late 2006 through mid-2007, and again serving as one of Proxy-Clean Products distributors from 2012 to early 2018, Defendant AHI is now repeating the cycle by partnering with a manufacturer to infringe Proxy-Clean Products' trademarks.

Defendant Distributor AHI Partners with Kanters AH and
Defendant Manufacturer KSP for KSP's Re-Entry into the U.S. Market

49.     Defendant AHI's 2006-2007 infringement targeted Proxy-Clean Products' Proxy-Clean® trademark, by simply dropping the two letters "x" and "y" from the Proxy-Clean® trademark, to create the infringing "Pro-Clean" product name.  The current cycle of AHI's infringement is now targeting Proxy-Clean Products' Mineral-Clean® trademark, by dropping the three letters "ral" and adding the letter "x" to the Mineral-Clean® trademark, to create the infringing "Minex-Clean" product name.

50.     Just as Defendant AHI did in its 2006-2007 infringement campaign, AHI in its present campaign is using labeling and marketing materials copied verbatim from Plaintiff Proxy-Clean Products' labeling and marketing materials.

51.     The following pages show side-by-side comparisons of Plaintiff Proxy-Clean Products' Mineral-Clean® products, and Defendants' infringing "Minex-Clean" products.  As can

be seen from these comparisons, Defendants are marketing their infringing "Minex-Clean" products using product descriptions, labeling, and directions for use that copy verbatim from Plaintiff Proxy-Clean Products' Mineral-Clean® labeling and marketing materials.  Defendants even chose a non-functional product coloring that mimics Plaintiff's non-functional product coloring.

**Plaintiff Proxy-Clean Products' Mineral-Clean® Product Name and Coloring**





---

**Defendants Kanters' and AHI's "Minex-Clean" Product Name and Coloring**



**Plaintiff Proxy-Clean Products' Description of Product Features**



- Conforms to USDA Inspection Programs
- Efficiently removes mineral & scale
- Equipment-friendly
- Fast-acting
- Cost-effective
- Conditions water by reducing pH

---

**Defendants Kanters' and AHI's Description of Product Features**

# MINEX-CLEAN™

- Efficiently removes scale and mineral deposits
- Equipment friendly
- Conforms to USDA Inspection Programs
- Fast acting and cost effective
- Conditions water by reducing pH

**Plaintiff Proxy-Clean Products' Directions for Use**



## DIRECTIONS FOR USE

### REMOVING SCALE AND MINERAL:

- Determine the capacity of the drinking water system.
- Prepare a 1-3% solution depending on degree of scale & mineral.
- Introduce the solution into the system.
- Activate all nipples or cups.
- Allow the solution to circulate, if possible.
- After cleaning, thoroughly flush with potable water.

---

**Defendants Kanters' and AHI's Directions for Use**

## MINEX-CLEAN™

### Directions for use

**Removing scale and mineral without animals present**

1. Determine the capacity of the drinking water system
2. Prepare a 1-3% solution depending on degree of scale and mineral
3. Introduce the solution into the system
4. Activate all nipples or cups
5. Allow the solution to circulate, if possible
6. After cleaning, thoroughly flush with potable water.

52.     As can be seen from the second page of comparisons above for product features, Defendants copied Plaintiff Proxy-Clean Products' six bullet point list of features verbatim, merely moving the first point to be the third, and combining the fourth and fifth points as one.  As can be seen from the third page of comparisons above, Defendants copied Proxy-Clean Products' directions for use precisely without any changes.

53.     As can be seen from the first page of comparisons above, Defendants even chose a similar non-functional color for their infringing products.   Plaintiff Proxy-Clean Products describes the color of its Mineral-Clean® products as "clear pink" in its product Safety Data Sheet. Defendants describe their infringing "Minex-Clean" products as "light red" in their product Safety Data Sheet.

Defendant KSP's Re-Entry into the U.S. Market includes Another Infringing "-Clean"
Product, a Hydrogen Peroxide Based Product Called "Agsan-Clean"
Competing Directly with Plaintiff's Hydrogen Peroxide Based Proxy-Clean® Product

54.     In addition to Defendants marketing their competing "Minex-Clean" products in violation of Proxy-Clean Products' Mineral-Clean® trademark, and its "-Clean" family of trademarks, Defendants are marketing another competing "-Clean" product called "Agsan-Clean," which is a hydrogen peroxide based product that competes directly with Plaintiff's Proxy-Clean® hydrogen peroxide based products.

55.     The following pages show side-by-side comparisons of Plaintiff's Proxy-Clean® hydrogen peroxide based products, and Defendants' infringing "Agsan-Clean" hydrogen peroxide based products.  As can be seen from these comparisons, Defendants are marketing their infringing "Agsan-Clean" products using product descriptions, labeling, and directions for use that copy verbatim from Plaintiff's Proxy-Clean® labeling and marketing materials.

**Plaintiff's Proxy-Clean® Product Name and Coloring**

# Proxy-Clean.

Proxy-Clean is a hydrogen peroxide based product,
specially formulated to work in livestock operations of any size.

## Benefits of using Proxy-Clean

- **Removes & Prevents Heavy Soils**
- **Equipment Friendly:**
  *No Damage to nipples, seals, medicators, regulators, etc.*
- **Fast Acting & Bio-Degradable**
- **Cost Effective**
- **Environmentally Friendly**

**BETTER FLOCK PERFORMANCE USING PROXY-CLEAN**
*Third Party Integrator Testimonials*

- **Running Proxy-Clean:**
  *For the first 14-21 days, gives a great start for as little as $25-$30 per house.*
- **Decreased mortality**
- **Increased water consumption**
- **Improved feed conversion (multiple points in improvement)**
- **Can be run through entire flock to provide exceptional results**
- **Labeled for use with animals present**



**Defendants Kanters' and AHI's "Agsan-Clean" Product Name and Coloring**



**Plaintiff Proxy-Clean Products' Description of Product Features**



- **Formulated exclusively for livestock drinking water systems**
- **Removes & prevents heavy soils**
- **Equipment Friendly:**
  *No damage to nipples, medicators, regulators, etc.*
- **Fast acting & biodegradable**
- **Cost effective**
- **Environmentally friendly**

---

**Defendants Kanters' and AHI's Description of Product Features**



# The original waterline cleaner

- ◆ **Removes and prevents heavy soils**
- ◆ **Equipment friendly**
- ◆ **Environmentally friendly**
- ◆ **Fast acting and bio-degradable**
- ◆ **Cost effective**
- ◆ **Stabilized hydrogen peroxide**

**Plaintiff Proxy-Clean Products' Directions for Use**

## CLEANING WHEN THE SYSTEM IS NOT IN USE:

• Determine the capacity of the drinking water system
• Prepare a 1-3% solution, depending on the degree of contamination
• Introduce the solution into the system
• Make sure there is adequate air release
• Remove the cap at the end of the drinking system to check for the fizzing
  reaction, to determine that Proxy-Clean® has reached every point
• Activate all nipples or cups
• Allow the solution to circulate, if possible
• If circulation is not possible, the system must stand full for a
  minimum of 12 hours
• After cleaning, thoroughly flush with potable water
• Once again, activate all nipples or cups

**If cleaning has to be done when animals are present,** start with a
dosage of 8 ounces of **Proxy-Clean®** per 5 gallons of water.
**For heavier cleaning,** the dosage may be raised until a maximum of
20 ounces of **Proxy-Clean®** per 5 gallons of water is reached.

---

**Defendants Kanters' and AHI's Directions for Use**

### Cleaning without animals present:

1. Determine the capacity of the drinking water system
2. Prepare a 1-3% solution depending on the degree of contamination
3. Introduce the solution into the system
4. Make sure there is adequate air release
5. Remove the cap of the end of the drinking system to check for the fizzing reaction to determine the Agsan-clean™ has reached every point or use test strips
6. Activate all nipples or cups
7. The system must stand full for a minimum of 12 hours
8. After cleaning, thoroughly flush with potable water
9. Once again activate all nipples or cups

**If cleaning has to be done when animals are
present,** start with a dosage of 8 ounces of Agsan-
Clean™ per 5 gallons of water.
**For heavier cleaning,** the dosage may be raised
until a maximum of 20 ounces of Agsan-Clean™ per
5 gallons of water is reached.

56.     As can be seen from the second page of comparisons above for product features, Defendants copied Plaintiff Proxy-Clean Products' six bullet point list of features verbatim, merely moving the last point to be the third, removing the first point, and adding a final point referencing hydrogen peroxide.  As can be seen from the third page of comparisons above, Defendants copied Proxy-Clean Products' directions for use precisely.

57.     As can be seen from the first and second pages of comparisons above, Defendants even chose the same blue color for the packaging and marketing of their infringing products.

58.     Furthermore, Defendants' falsely marketing their new introduction of their "Agsan-Clean" products as "The Original," upon KSP's attempted re-entry into the U.S. market, is further evidence of the Defendants' bad faith attempt at false association with Plaintiff, and false advertising.


Defendants' Infringing "Minex-Clean" Products Contain Hydrogen Chloride,
Which Makes Them Unsafe and Defective for Use in
<u>Livestock Drinking Water Systems Having Stainless Steel and Rubber Components</u>

59.     In addition to infringing Plaintiff Proxy-Clean Products' Mineral-Clean® trademark, and its "-Clean" family of trademarks, which is likely to cause confusion and mistake, and to deceive consumers as to an affiliation of Defendants Kanters and AHI with Plaintiff that does not exist, Defendants are marketing their infringing "Minex-Clean" and "Agsan-Clean" products as "identical to," "just as good as," and "as effective as" Plaintiff's Mineral-Clean® and Proxy-Clean® products.

60.     Plaintiff's Mineral-Clean® and Proxy-Clean® products are proprietary blends that are superior to Defendants' infringing "Minex-Clean" and "Agsan-Clean" products, which are

certainly not "identical to," "just as good as," nor "as effective as," Plaintiff's superior Mineral-Clean® and Proxy-Clean® products.

61.     Defendants' misconduct in marketing their infringing "Minex-Clean" products as "identical to," "just as good as," and "as effective as" Proxy-Clean Products' superior Mineral-Clean® products is particularly egregious and damaging to Plaintiff, considering that Defendants' infringing "Minex-Clean" products contain Hydrogen Chloride, which makes them unsafe and defective for use in livestock drinking water systems having stainless steel and rubber components.

62.     Plaintiff's Proxy-Clean Products' Mineral-Clean® product is a proprietary blend of organic and inorganic acids, specially formulated to remove buildup and scale in livestock drinking water systems.  It does not contain Hydrogen Chloride.

63.     Although Defendants' product labeling and marketing materials do not specify the ingredients in their infringing "Minex-Clean" products, the Safety Data Sheet for the product shows that it is a mixture of phosphoric acid, citric acid, and hydrogen chloride.  The product Safety Data Sheet further notes that the odor is "pungent," which comes from the Hydrogen Chloride (HCl), which is a colorless, corrosive gas with a pungent, suffocating odor.

64.     The Safety Data Sheet for Plaintiff Proxy-Clean Products' Mineral-Clean® product, which does not contain Hydrogen Chloride, specifies the odor as "odorless."

65.     Livestock drinking water systems have stainless steel components including drinker pins, drinker housings and related mechanisms.  These water systems also have sensitive rubber components including regulator diaphragms, drinker seals, hoses, and related parts.

66.     Hydrogen Chloride is the gaseous form of HCl.  When it is dissolved in water it forms Hydrochloric Acid, which is the aqueous form of HCl.  Hydrochloric Acid is highly corrosive to stainless steel, and will destroy the stainless steel components in livestock drinking

water systems. Hydrochloric Acid will also destroy the sensitive rubber components in livestock drinking water systems.

67. In addition, Hydrogen Chloride, as the gaseous form of HCl, poses potential additional hazards making it unsafe for inhalation by workers inappropriately exposed to this hazard.

68. While Defendants' unsafe and defective Hydrochloric Acid based infringing "Minex-Clean" products will destroy the customers' drinking water systems over time, Plaintiff Proxy-Clean Products' Mineral-Clean® products are safe and effective, and will not corrode and destroy the stainless steel and rubber components in customers' drinking water systems.

69. Defendants' inexcusable and egregious marketing of unsafe and defective products, while infringing Plaintiff's trademarks, and creating a false association with Plaintiff that does not exist, likely will harm Plaintiff in many ways, including customers blaming Plaintiff for the damage that Defendants' products will do to the customers' drinking water systems. Especially considering the situation in which customers may use both Plaintiff's and Defendants' products over time, may not distinguish between which product is safe and effective, based on Defendants' misleading statements as described above, and which product is unsafe and defective, and end up blaming Plaintiff for the damage to the customers' drinking water systems caused by Defendants' unsafe and defective products.

**V.**
**CLAIMS FOR RELIEF**

**COUNT I**
**FEDERAL TRADEMARK INFRINGEMENT**
**UNDER 15 U.S.C. §§ 1114 AND 1125**

70.     Plaintiff Proxy-Clean Products incorporates by reference the allegations of each and every one of the preceding paragraphs as though fully set forth herein.

71.     Plaintiff Proxy-Clean Products is the owner of United States Trademark Registration No. 5,296,094, issued September 26, 2017, for the mark Mineral-Clean®, for use in connection with goods described as "Additive comprising organic and inorganic acids for use in water delivered to poultry and livestock, for the purpose of lowering the potential of hydrogen (pH) and reducing the build-up of minerals in pipes" (hereinafter "additives for mineral build-up and scale removal").  A copy of the '094 Mineral-Clean® Trademark Registration is attached to this Complaint as Exhibit P-3.

72.     Defendants Kanters' and AHI's unauthorized use in commerce of a reproduction, counterfeit, copy, and colorable imitation of Proxy-Clean Products' registered Mineral-Clean® trademark in connection with the sale, offering for sale, distribution, and advertising of additives for mineral build-up and scale removal is likely to cause confusion, or to cause mistake, or to deceive, in violation of 15 U.S.C. § 1114(1)(a).

73.     Defendants Kanters' and AHI's unauthorized application of a reproduction, counterfeit, copy, or colorable imitation of Proxy-Clean Products' registered Mineral-Clean® trademark to labels, signs, prints, packages, wrappers, receptacles, and advertisements intended to be used in commerce upon or in connection with the sale, offering for sale, distribution, and advertising of additives for mineral build-up and scale removal is likely to cause confusion, or to cause mistake, or to deceive, in violation of 15 U.S.C. § 1114(1)(b).  Defendants' infringing acts

have been committed with knowledge that the imitation of Proxy-Clean Products' registered Mineral-Clean® trademark is intended to be used to cause confusion, or to cause mistake, or to deceive.

74.     Defendants Kanters' and AHI's unauthorized use in commerce of Proxy-Clean Products' Mineral-Clean trademarks, and its "-Clean" family of trademarks, along with Defendants' marketing of their infringing "Minex-Clean" and "Agsan-Clean" products using product coloring and packaging, product descriptions, labeling, and directions for use, that copy verbatim from Plaintiff Proxy-Clean Products' Mineral-Clean® and Proxy-Clean® labeling and marketing materials, is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of Defendants with Proxy-Clean Products, as to the origin and sponsorship of Defendants' products, and as to the approval of Defendants' products by Proxy-Clean Products, in violation of 15 U.S.C. § 1125(a)(1)(A).

75.     Defendants Kanters' and AHI's infringement is willful in violation of 15 U.S.C. §§ 1114 and 1125 because Defendants are aware of Proxy-Clean Products' trademark registration and Defendants nevertheless by their actions have indicated that they will not cease the infringing activity.

76.     Plaintiff Proxy-Clean Products has no adequate remedy at law that will compensate for the continued and irreparable harm it will suffer if Defendants' infringing acts are allowed to continue.

77.     Plaintiff Proxy-Clean Products asserts that this is an exceptional case such that the Defendants should be required to pay Plaintiff's reasonable attorney fees in accordance with 14 U.S.C. § 1117(a).

78.     Plaintiff Proxy-Clean Products is entitled to, among other relief, injunctive relief and an award of actual damages, Defendants' profits, enhanced damages and profits, reasonable attorneys' fees, and costs of the action under Sections 34 and 35 of the Lanham Act, 15 U.S.C. §§ 1116, 1117, together with prejudgment and post-judgment interest.

**COUNT II**
**FALSE ASSOCIATION**
**FEDERAL UNFAIR COMPETITION**
**UNDER 15 U.S.C. § 1125(a)(1)(A)**

79.     Plaintiff Proxy-Clean Products incorporates by reference the allegations of each and every one of the preceding paragraphs as though fully set forth herein.

80.     The false association subsection of the Lanham Act, Section 43(a)(1)(A), provides as follows:

> (a) Civil action—
>
> > (1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—
> >
> > > (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, . . ., shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a)(1)(A).

81.     Defendants Kanters' and AHI's unauthorized use in commerce of Plaintiff Proxy-Clean Products' Mineral-Clean trademarks, and its "-Clean" family of trademarks, along with Defendants' marketing of their infringing "Minex-Clean" and "Agsan-Clean" products using product coloring and packaging, product descriptions, labeling, and directions for use, that copy verbatim from Plaintiff Proxy-Clean Products' Mineral-Clean® and Proxy-Clean® labeling and

marketing materials is designed, intended, and likely to deceive consumers as to the origin, source, sponsorship, or affiliation of Defendants' goods, and is designed, intended, and likely to cause consumers to believe, contrary to fact, that Defendants' goods are sold, authorized, endorsed, or sponsored by Plaintiff, or that Defendants are affiliated with or sponsored by Plaintiff.

82.     Defendants' conduct as alleged herein constitutes unfair competition in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A).

83.     Upon information and belief, Defendants' conduct as alleged herein is willful and is intended to and is likely to cause confusion, mistake, or deception as to the affiliation, connection, or association of Defendant with Plaintiff.

84.     Defendants' conduct as alleged herein is causing immediate and irreparable harm and injury to Plaintiff, and to its goodwill and reputation, and will continue to both damage Plaintiff and confuse the public unless enjoined by this Court. Plaintiff has no adequate remedy at law.

85.     Plaintiff Proxy-Clean Products is entitled to, among other relief, injunctive relief and an award of actual damages, Defendants' profits, enhanced damages and profits, reasonable attorneys' fees, and costs of the action under Sections 34 and 35 of the Lanham Act, 15 U.S.C. §§ 1116, 1117, together with prejudgment and post-judgment interest.

## COUNT III
## FALSE ADVERTISING
## FEDERAL UNFAIR COMPETITION
## UNDER 15 U.S.C. § 1125(a)(1)(B)

86.     Plaintiff Proxy-Clean Products incorporates by reference the allegations of each and every one of the preceding paragraphs as though fully set forth herein.

87.     The false advertising subsection of the Lanham Act, Section 43(a)(1)(B), provides as follows:

(a) Civil action—

(1) Any person who, on or in connection with any goods . . . uses in commerce any . . . false or misleading description of fact, or false or misleading representation of fact, which—

. . .

(B) in commercial advertising or promotion, misrepresents the nature, characteristics, [or] qualities . . . of his or her or another person's goods, . . ., shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a)(1)(B).

88.     Defendants Kanters' and AHI's misconduct in marketing their infringing, unsafe, and defective "Minex-Clean" products as "identical to," "just as good as," and "as effective as" Proxy-Clean Products' superior Mineral-Clean® products constitutes false and misleading descriptions of fact, and false and misleading representations of fact.  These false and misleading descriptions and representations of facts have been and are being made in commercial advertising and promotion, which misrepresent the nature, characteristics, and qualities of Kanters' and AHI's unsafe and defective products, while at the same time misrepresent the nature, characteristics, and qualities of Proxy-Clean Products' safe and effective products.

89.     Defendants Kanters and AHI therefore are liable for their misconduct, for which Proxy-Clean Products believes that it is likely to be damaged.

90.     Upon information and belief, Defendants' conduct as alleged herein is willful and is intended to and is likely to cause damage to Plaintiff.

91.     Defendants' conduct as alleged herein is causing immediate and irreparable harm and injury to Plaintiff, and to its goodwill and reputation, and will continue to both damage Plaintiff and confuse the public unless enjoined by this Court. Plaintiff has no adequate remedy at law.

92.     Plaintiff Proxy-Clean Products is entitled to, among other relief, injunctive relief and an award of actual damages, Defendants' profits, enhanced damages and profits, reasonable

attorneys' fees, and costs of the action under Sections 34 and 35 of the Lanham Act, 15 U.S.C. §§ 1116, 1117, together with prejudgment and post-judgment interest.

## COUNT IV
## TRADEMARK INFRINGEMENT AND
## UNFAIR COMPETITION UNDER TEXAS LAW

93.     Plaintiff Proxy-Clean Products incorporates by reference the allegations of each and every one of the preceding paragraphs as though fully set forth herein.

94.     Defendants Kanters' and AHI's improper acts complained of herein constitute trademark infringement and unfair competition under the common law of the State of Texas.  As a result of Defendants' infringement and unfair competition, Plaintiff Proxy-Clean Products has suffered and will continue to suffer injury and damage in an amount yet to be determined.  Upon information and belief, Defendants' unlawful acts of infringement and unfair competition have resulted in profits and unjust enrichment to Defendant in an amount yet to be determined. Defendants' acts of trademark infringement and unfair competition are causing harm to Proxy-Clean Products.

95.     The injury resulting to Proxy-Clean Products from Defendants' unlawful acts complained of herein are continuing and they will cause irreparable injury to Proxy-Clean Products and to the public.  Unless Defendants' unlawful acts are enjoined by this Court, they will continue to cause irreparable injury to Proxy-Clean and to the public, for which there is no adequate remedy at law.

96.     Additionally, or in the alternative, Proxy-Clean Products seeks an accounting and its actual and consequential damages resulting from Defendants' infringing acts.  Moreover, as a result of Defendants' egregious infringement, Proxy-Clean Products seeks treble, additional, and enhanced damages from Defendants.

## COUNT V
## CYBERSQUATTING

97.     Plaintiff Proxy-Clean Products is the owner of all right, title, and interest in and to United States Trademark Registration Nos. 2,805,574 and 5,296,093, for the distinctive mark "Proxy-Clean" ("the '574 and '093 Registrations").  True copies of the '574 and '093 Registrations are attached to this Complaint as Exhibits P-1 and P-2.

98.     Defendant KSP is the Registrant of the "proxy-clean.com" Internet domain name. The WhoIs data for the "proxy-clean.com" Internet domain name shows "Kanters Special Products" as the Registrant, which is the Defendant KSP.

99.     Defendant KSP has a bad faith intent to profit from Plaintiff Proxy-Clean Products' "Proxy-Clean" trademark, and has registered, renewed its registration, trafficked in, and/or used the "proxy-clean.com" Internet domain name, which is identical or confusingly similar to the Plaintiff Proxy-Clean Products' "Proxy-Clean" trademark, in violation of the Anti-Cybersquatting Consumer Protection Act, Lanham Act Section 43(d)(1)(A), 15 U.S.C. § 1125(d)(1)(A).

100.    Plaintiff Proxy-Clean Products' "Proxy-Clean" trademark is distinctive, and was distinctive at the time of Defendant KSP's registration, and renewal of registration, of the "proxy-clean.com" Internet domain name.

101.    Pursuant to 15 U.S.C. § 1125(d)(1)(B), in determining that the Defendant KSP has a bad faith intent to profit from Plaintiff Proxy-Clean Products' "Proxy-Clean" trademark, the Court should consider the following facts/factors:

(i)     Defendant KSP's lack of trademark or other intellectual property rights in the "proxy-clean.com" Internet domain name (especially considering the fact that Defendant KSP sold its rights in the "Proxy-Clean" trademark to the Plaintiff Proxy-Clean Products);

(ii)      The "proxy-clean.com" Internet domain name does not consist of the legal name of, nor a name that is otherwise commonly used to identify, Defendant KSP;

(iii)     Defendant KSP's lack of prior use of the "proxy-clean.com" Internet domain name in connection with the bona fide offering of any goods or services (other than prior use related to the trademark rights in the "Proxy-Clean" trademark that Defendant KSP sold to the Plaintiff Proxy-Clean Products);

(iv)     Defendant KSP's lack of a bona fide noncommercial or fair use of Proxy-Clean Products' "Proxy-Clean" trademark in a site accessible under the "proxy-clean.com" Internet domain name;

(v)      Defendant KSP's intent to divert consumers from Plaintiff Proxy-Clean Products' online location to a site accessible under the "proxy-clean.com" Internet domain name that could harm the goodwill represented by Proxy-Clean Products' "Proxy-Clean" trademark, for commercial gain, by creating a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of the site; and

(vi)     Defendant KSP's offer to transfer, sell, or otherwise assign the "proxy-clean.com" Internet domain name to Plaintiff Proxy-Clean Products, and any evidence that may be discovered regarding Defendant KSP's offer to any third party, for financial gain without having used, or having an intent to use, the domain name in the bona fide offering of any goods or services, and any evidence discovered regarding Defendant KSP's prior conduct indicating a pattern of such conduct.

102.    These acts of cybersquatting are irreparably harming and causing damage to Plaintiff Proxy-Clean Products and will continue to do so unless and until restrained by this Court.

103.     Defendant KSP's acts of cybersquatting are willful because it has deliberately continued its cybersquatting conduct after having received notice of Plaintiff Proxy-Clean Products' trademark registration.

104.     Plaintiff asserts that this is an exceptional case such that the Defendant KSP should be required to pay Plaintiff's reasonable attorney fees in accordance with 15 U.S.C. § 1117(a).

105.     Plaintiff Proxy-Clean Products is entitled to, among other relief, an order transferring the "proxy-clean.com" Internet domain name to Plaintiff pursuant to 15 U.S.C. § 1125(d)(1)(C), Defendant KSP's profits, damages sustained by Plaintiff, interest, and costs pursuant to 15 U.S.C. § 1117(a), statutory damages in the amount of not less than $1,000 and not more than $100,000 pursuant to 15 U.S.C. § 1117(d), and trebled damages pursuant to 15 U.S.C. § 1117(a).

## VI.
## JURY DEMAND

106.     Plaintiff hereby demands a trial by jury of any and all issues triable of right by a jury pursuant to Rule 38 of the Federal Rules of Civil Procedure.

## PRAYER

Plaintiff Proxy-Clean Products requests a judgment from this Court including the following:

a.     A finding that Defendants Kanters and AHI willfully and deliberately violated 15 U.S.C. § 1114, that Plaintiff has been damaged by such violation, and that the Defendants are liable to Plaintiff for such violation;

b.      A finding that Defendants willfully and deliberately violated 15 U.S.C. § 1125(a), that Plaintiff has been damaged by such violations, and that Defendants are liable to Plaintiff for such violations;

c.      A finding that this case is "exceptional" under 15 U.S.C. §1117(a);

d.      A finding that the Defendants committed trademark infringement and unfair competition under Texas law, that Plaintiff has been damaged by such infringement and unfair competition, and that Defendants are liable to Plaintiff for such violations;

e.      Under all claims for relief, that an injunction be temporarily, preliminarily, and permanently issued enjoining Defendants and their officers, employees, agents, successors and assigns, and all those in active concert and participation with them from infringing Plaintiff's Mineral-Clean trademarks, infringing Plaintiff's "-Clean" family of trademarks, and marketing products using product coloring and packaging, product descriptions, labeling, and directions for use, that copy verbatim from Plaintiff's labeling and marketing materials;

f.      An Order pursuant to 15 U.S.C. § 1118 directing that Defendants deliver for destruction all products, promotional and advertising materials, labels, tags, signs, prints, packages, videos or other materials, bearing or using unauthorized versions of Plaintiff Proxy-Clean Products' Mineral-Clean trademarks, and Plaintiff's "-Clean" family of trademarks, and any products using product coloring and packaging, product descriptions, labeling, and directions for use, that copy verbatim from Plaintiff's labeling and marketing materials;

g.      An Order directing such other relief as the Court may deem appropriate to prevent the trade and public from deriving the erroneous impression that any product manufactured, sold, or otherwise circulated or promoted by Defendants are authorized by Plaintiff Proxy-Clean Products;

h.      An Order directing the Defendants and their agents, employees, servants, attorneys, successors, and assigns, and all others in privity or acting in concert therewith, to file with this Court, and serve upon Plaintiff's counsel within thirty (30) days after entry of such judgment, a written report under oath, setting forth in detail the manner and form in which they have complied with such judgment;

i.      An award of Plaintiff's costs and disbursements incurred in this action, including Plaintiff's reasonable attorneys' fees;

j.      An award of Plaintiff's damages trebled or, alternatively, an award of Defendants' wrongful profits trebled, whichever is greater, plus Plaintiff's costs and attorneys' fees, pursuant to 15 U.S.C. § 1117;

k.      An award to Plaintiff of their costs incurred in this action, including an award of reasonable attorney fees under 17 U.S.C. § 1114;

l.      An award of Plaintiff's damages arising out of Defendants' acts;

m.      An Order requiring Defendants to file with the Court and provide to Plaintiff an accounting of all sales and profits realized by Defendants through the unauthorized use of Plaintiff Proxy-Clean Products' Mineral-Clean trademarks, and Plaintiff's "-Clean" family of trademarks, and any products using product coloring and packaging, product descriptions, labeling, and directions for use, that copy verbatim from Plaintiff's labeling and marketing materials;

n.      A finding that Defendant KSP is liable for cybersquatting under 15 U.S.C. § 1125(d)(1)(A);

o.      An Order transferring the "proxy-clean.com" Internet domain name to the Plaintiff, pursuant to 15 U.S.C. § 1125(d)(1)(C);

p.      An Order awarding Defendant KSP's profits, damages sustained by the Plaintiff, interest, and costs to Plaintiff and against Defendant KSP for its cybersquatting, pursuant to 15 U.S.C. § 1117(a);

q.      An Order awarding statutory damages in the amount of not less than $1,000 and not more than $100,000, pursuant to 15 U.S.C. § 1117(d);

r.      An Order awarding trebled damages to Plaintiff and against Defendant KSP for its cybersquatting, pursuant to 15 U.S.C. § 1117(a);

s.      A finding that this case is exceptional, and ordering Defendant KSP to pay Plaintiff's reasonable attorney fees in accordance with 15 U.S.C. § 1117(a);

t.      An award of interest, including pre-judgment interest on the foregoing sums; and

u.      An order awarding Plaintiff all such other and further relief as is available, at law or in equity, that this Court deems just, equitable, and proper under the circumstances.

Respectfully submitted this 16th day of May, 2019,


/s/ Charles J. Rogers_____
**Charles J. Rogers,** attorney-in-charge
Texas State Bar No. 00786205
**Conley Rose, P.C.**
575 N. Dairy Ashford Rd, Suite 1102
Houston, Texas  77079-1126
Telephone: (713) 238-8049
Facsimile: (713) 238-8008
e-mail: CRogers@conleyrose.com


**William H. Dietrich**
Texas State Bar No. 24071712
**Conley Rose, P.C.**
5601 Granite Parkway, Suite 500
Plano, Texas  75024-6608
Telephone: (972) 665-3612
Facsimile: (972) 731-2289
e-mail: BDietrich@dfw.conleyrose.com


**ATTORNEYS FOR PLAINTIFF**
**DAIRY CLEAN PRODUCTS, INC.**
**d/b/a PROXY-CLEAN PRODUCTS**